# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| LORA F.,[1] | : | Case No. 3:20-cv-00100 |
| | : | |
| Plaintiff, | : | Magistrate Judge Caroline H. Gentry |
| | : | (by full consent of the parties) |
| vs. | : | |
| | : | |
| COMMISSIONER OF THE SOCIAL | : | |
| SECURITY ADMINISTRATION, | : | |
| | : | |
| Defendant. | : | |

---

# DECISION AND ORDER

---

## I.     INTRODUCTION

Plaintiff filed an application for Disability Insurance Benefits and Supplemental

Security Income in January 2014 and February 2014, respectively. Plaintiff's claims were

denied initially and upon reconsideration. After a hearing at Plaintiff's request, an

Administrative Law Judge (ALJ) concluded that Plaintiff was not eligible for benefits

because she was not under a "disability" as defined in the Social Security Act. The

Appeals Council denied Plaintiff's request for review of that decision, and Plaintiff filed

an action with this Court.[2] Pursuant to a Joint Motion for Remand, the Court reversed and

remanded the case. The Appeals Council subsequently remanded the case pursuant to the

---

[1] *See* S.D. Ohio General Order 22-01 ("The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that due to significant privacy concerns in social security cases federal courts should refer to claimants only by their first names and last initials.").

[2] Assigned to Judge Walter H. Rice, Case Number 3:17-cv-00211.

Court's order. Another ALJ held a hearing and again concluded that Plaintiff was not under a "disability" as defined in the Social Security Act. After the Appeals Council denied Plaintiff's request for review of that decision, Plaintiff filed this action.

Plaintiff seeks an order remanding this matter to the Commissioner for the award of benefits or, in the alternative, for further proceedings. The Commissioner asks the Court to affirm the non-disability decision. This matter is before the Court on Plaintiff's Statement of Errors (Doc. 12), the Commissioner's Memorandum in Opposition (Doc. 13), Plaintiff's Reply (Doc. 14), and the administrative record (Doc. 11).

## II.     BACKGROUND

Plaintiff asserts that she has been under a disability since October 7, 2013. At that time, she was 49 years old. Accordingly, Plaintiff was considered a "younger person" under Social Security Regulations. *See* 20 C.F.R. §§ 404.1563(c), 416.963(c).[3] Plaintiff has a "high school education and above." *See* 20 C.F.R. § 404.1564(b)(4).

The evidence in the administrative record is summarized in the ALJ's decision (Doc. 11-10, PageID 850-863), Plaintiff's Statement of Errors (Doc. 12), Commissioner's Memorandum in Opposition (Doc. 13), and Plaintiff's Reply (Doc. 14). Rather than repeat these summaries, the Court will discuss the pertinent evidence in its analysis below.

---

[3] The remaining citations will identify only the pertinent Disability Insurance Benefits Regulations, as they are similar in all relevant respects to the corresponding Supplemental Security Income Regulations.

III.     STANDARD OF REVIEW

The Social Security Administration provides Disability Insurance Benefits and Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 402, 423(a)(1), 1382(a). The term "disability" means "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which … has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a).

This Court's review of an ALJ's unfavorable decision is limited to two inquiries: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). "Unless the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence," this Court must affirm the ALJ's decision. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020). Thus, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." (*Id.*)

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). This limited standard of review does not permit the Court to weigh the

3

evidence and decide whether the preponderance of the evidence supports a different conclusion. Instead, the Court is confined to determining whether the ALJ's decision is supported by substantial evidence, which "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" (*Id.*) (citation omitted).

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" (*Id.*) (citations omitted). Such an error of law will require reversal even if "the outcome on remand is unlikely to be different." *Cardew v. Comm'r of Soc. Sec.*, 896 F.3d 742, 746 (6th Cir. 2018) (internal quotations and citations omitted).

## IV. THE ALJ'S DECISION

As noted previously, the ALJ was tasked with evaluating the evidence related to Plaintiff's application for benefits. In doing so, the ALJ considered each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 404.1520. The ALJ made the following findings of fact:

Step 1: Plaintiff has not engaged in substantial gainful activity since October 7, 2013, the alleged onset date.

Step 2: She has the severe impairments of "lumbosacral degenerative disc disease, mild degenerative joint disease of the right knee, tarsal

tunnel syndrome affecting both feet, mild congestive heart failure, depression, and an anxiety disorder."

Step 3: She does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4: Her residual functional capacity (hereinafter "RFC"), or the most she can do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of light work as defined in 20 C.F.R. § 404.1567(b), subject to the following limitations: "(1) occasional crouching, crawling, kneeling, stooping, balancing, and climbing of ramps and stairs; (2) no climbing of ladders, ropes, and scaffolds; (3) no work around hazards such as unprotected heights or dangerous machinery; (4) [Plaintiff] is limited to performing unskilled, simple, repetitive tasks; (4) [sic] occasional superficial contact with co-workers and supervisors (superficial contact is defined as retaining the ability to receive simple instructions, ask simple questions and receive performance appraisals but as lacking the ability to engage in more complex social interactions such as persuading other people or resolving conflicts); (5) no public contact; (6) no teamwork or tandem tasks; (7) no close over the shoulder supervision; (8) no fast paced production work or jobs which involve strict production quotas; and (9) [Plaintiff] is limited to performing jobs which involve very little, if any, change in the jobs duties or the work routine from one day to the next."

Step 4: She is unable to perform any of her past relevant work.

Step 5: Considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she can perform.

(Doc. 11-10, PageID 850-863.) These findings led the ALJ to conclude that Plaintiff does not meet the definition of disability and so is not entitled to benefits. (*Id.*, PageID 862.)

## V.    ANALYSIS

Plaintiff asserts, among other statements of error, that the ALJ erred in the assessment of treating and examining medical opinions. (Doc. 12, PageID 2278.) Plaintiff

5

specifically challenges the ALJ's analysis of the opinions of treating psychiatrist Susan Songer, M.D. and consultative evaluating psychologist Stephen Halmi, Psy.D. (*Id.,* PageID 2279-80.) Because the Court finds error in the ALJ's weighing of these opinions, it need not address the other arguments raised by Plaintiff.

Social Security regulations require ALJs to adhere to certain standards when weighing medical opinions. "Key among these is that greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians, commonly known as the treating physician rule." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007) (citations omitted).  The rule is straightforward: "Treating-source opinions must be given 'controlling weight' if two conditions are met: (1) the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) the opinion "is not inconsistent with the other substantial evidence in [the] case record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (quoting in part 20 C.F.R. § 404.1527(c)(2)); *see Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 723 (6th Cir. 2014).

If the ALJ does not assign controlling weight to the treating physician's opinion, "the ALJ, in determining how much weight is appropriate, must consider a host of factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors." *Rogers*, 486 F.3d at 242 (citing *Wilson v. Comm'r of Soc. Sec,* 378 F.3d 541, 544 (6th Cir. 2004)).

The regulations also require ALJs to provide "good reasons" for the weight placed upon a treating source's opinions. *Wilson,* 378 F.3d at 544. This mandatory "good reasons" requirement is satisfied when the ALJ provides "specific reasons for the weight placed on a treating source's medical opinions." (*Id.*) (quoting Soc. Sec. R. 96-2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996)).[4] The goal is to make clear to any subsequent reviewer the weight that was given and the reasons for that weight. (*Id.*) Substantial evidence must support the reasons provided by the ALJ. (*Id.*)

As for opinions from non-treating sources, the ALJ must consider all of the following factors in deciding the weight to give any medical opinion: examining relationship; treatment relationship; supportability; consistency; specialization; and other factors. (*Id.,* (c)).

Dr. Songer

Dr. Songer completed a medical source statement form on April 30, 2014. (Doc. 11-7, PageID 648.) Dr. Songer had treated Plaintiff for Major Depressive Disorder, recurrent, since March 6, 2007. (*Id.*) In April 2014, Dr. Songer opined that Plaintiff had no functional restrictions related directly to her mental impairment. (*Id.*) A few years later, on October 17, 2016, Dr. Songer completed a Basic Medical form for the Ohio Department of Job and Family Services. (Doc. 11-5, PageID 1102.) Asked to describe Plaintiff's medical conditions, Dr. Songer referred to diagnoses of Major Depressive Disorder, recurrent, and Generalized Anxiety Disorder. (Doc. 11-15, PageID 1101.) She

---

[4] SSR 96-2p has been rescinded. However, this rescission is effective only for claims filed on or after March 27, 2017. See SSR 96-2p, 2017 WL 3928298 at *1. Because Plaintiff filed his application for benefits prior to March 27, 2017, SSR 96-2p still applies in this case.

reported that current medications included Effexor, Abilify, and Trazodone. (*Id.*) As for "physical/psychological/psychiatric findings," Dr. Songer indicated "depression, anxiety, problems concentrating, problems with memory, insomnia, [and] decreased energy." (*Id.*) Dr. Songer noted that continued psychotherapy and medication management were "needed." (*Id.*) Dr. Songer indicated "N/A" when asked about Plaintiff's physical functional limitations. (*Id.*) However, she also indicated Plaintiff was "unemployable" and stated that any limitations were expected to last for a period of 12 months or more. (*Id.*)

The ALJ assigned "only partial weight" to Dr. Songer's assessment. (Doc.11-10, PageID 861.) The ALJ summarized Dr. Songer's opinion by stating: "She opined that [Plaintiff's] mental impairments do not impose any limitations attributable to her depression." (*Id.*) The ALJ did not mention Dr. Songer's statement that Plaintiff was "unemployable." (*Id.*) In support of the assignment of partial weight, the ALJ considered evidence of Plaintiff's depression, including mental limitations suggested by consultative psychologist Dr. Halmi. (*Id.*) The ALJ concluded that this evidence supported "some limitations on [Plaintiff's] ability to perform work activities, which have been incorporated into" the RFC. (*Id.*)

It is well-established that the ultimate issue of disability is reserved to the Commissioner rather than the treating physician. *See Kidd v. Comm'r,* 283 Fed. Appx. 336, 341 (6th Cir. 2008). "Thus, when a treating physician offers an opinion on an issue reserved to the Commissioner, such as whether the claimant is disabled, the ALJ need not accord that opinion controlling weight." *Id.* (citing *Bass v. McMahon*, 499 F.3d 506, 511

8

(6th Cir. 2007)). The regulations further state that when a medical source provides a statement such as that a claimant is "disabled" or "unable to work," the ALJ is not required to determine that the claimant is disabled or give any special significance to that statement. However, the ALJ is required to review all of the medical findings and other evidence that support that medical source's statement. *See* 20 C.F.R. § 404.1527 (d)(1), (3).

Accordingly, because Dr. Songer provided an opinion on an issue reserved to the Commissioner, the applicable regulations required the ALJ to review all of Dr. Songer's findings and any other evidence that supported her statement that Plaintiff is "unemployable." *See* 20 C.F.R. § 404.1527 (d)(1). However, the ALJ's decision contains no indication that the ALJ considered Dr. Songer's statement that Plaintiff is "unemployable," much less any of her findings or treatment notes.

The record contains treatment notes from Dr. Songer that arguably support her statement. Dr. Songer's progress notes documented findings that are not supportive, such as appropriate dress and grooming, logical thought processes, reports of a "pretty good" or "OK" mood, a full-ranged affect, normal behavior, and intact cognition, and fair insight and judgment. (*E.g.,* Doc. 11-7, PageID 594, 597, 601, 733, 763, 733.) On the other hand, Dr. Songer's progress notes also documented Plaintiff's subjective complaints of feeling depressed, anxious, and/or "stressed," as well as objective mental status findings that included depressed and/or anxious moods, tearfulness, and only fair insight and judgment – all of which could support Dr. Songer's assessment. (*E.g., id.,* PageID 603, 737, 745, 754, 760.)

9

In explaining the partial weight assigned to Dr. Songer's opinion, the ALJ broadly stated that he considered "evidence of [Plaintiff's] depression, including mental limitations found by Dr. Halmi." (Doc.11-10, PageID 861.) But the ALJ did not cite to any specific objective evidence of depression, much less any objective evidence from Dr. Songer. (*Id.*) Nor did the ALJ cite to any medical evidence or findings from Dr. Songer elsewhere in the decision. For example, in the "Paragraph B" criteria analysis at Step 3, the ALJ cited only to Plaintiff's own subjective statements in a March 2014 Function Report, Plaintiff's hearing testimony, and one objective finding from Dr. Halmi's consultative psychological evaluation. (Doc. 11-10, PageID 853-54.) Similarly, in the RFC analysis, the ALJ referenced Plaintiff's history of mental health treatment with Dr. Songer but cited no medical findings from Dr. Songer. (*Id.,* PageID 857-58.) Instead, the ALJ merely summarized Plaintiff's treatment goals and cited one subjective statement from Plaintiff in February 2014 that she was feeling "surprisingly pretty good." (*Id.*) The ALJ subsequently summarized the findings of Dr. Halmi's consultative psychological evaluation, but he made no mention of any of Dr. Songer's findings. (*Id.*)

For all of these reasons, the ALJ violated applicable Social Security regulations and reversibly erred by failing to review Dr. Songer's medical findings and other evidence in support of her statement that Plaintiff is "unemployable."

Dr. Halmi

Dr. Halmi performed a consultative psychological evaluation on June 23, 2014. (Doc. 11-7, PageID 650.) He diagnosed "long term depression and anxiety" with a poor prognosis for improvement. (*Id.,* PageID 655.) Dr. Halmi opined that Plaintiff was

capable of understanding, remembering, and carrying out one-step, two-step, and multi-step instructions "without impairment from her depression or anxiety." (*Id.,* PageID 656.) However, Dr. Halmi also opined that Plaintiff's depression was "significant enough that it would interfere with her ability to maintain adequate attention, concentration, persistence, and pace to perform a simple repetitive task for an extended period of time." (*Id.*) He also opined that there would be "significant problems" with the Plaintiff's ability to maintain adequate attention, concentration, persistence, and pace as needed to perform a multi-step task for an extended period of time. (*Id.*)

With regard to social interactions, Dr. Halmi opined that Plaintiff "may have some minor problems getting along with others" due to sensitivity and "would not work well with the general public" due to emotional lability. (*Id.*) Dr. Halmi further opined that Plaintiff would be unable to handle difficult people and that her hypersensitivity would "affect her ability to accept constructive criticism." (*Id.*) According to Dr. Halmi, Plaintiff would have trouble meeting deadlines due to "diminished initiative and motivation to engage in productive activities." (*Id.*) Finally, Dr. Halmi opined that although Plaintiff would be "capable of solving unforeseen, novel problems," she would "give up on tasks that she finds challenging due to her reduced frustration tolerance." (*Id.,* 656-57.)

The ALJ reviewed Dr. Halmi's opinion and assigned partial weight. (Doc. 11-10, PageID 860.) Notably, in summarizing that opinion, the ALJ recited Dr. Halmi's statement that Plaintiff would have "significant problems maintaining adequate attention, concentration, persistence, and pace to perform a multi-step task for an extended period

of time." (*Id.*) However, the ALJ did not mention Dr. Halmi's opinion that Plaintiff would also have difficulty performing a *simple, repetitive task* for an extended period of time. (*Id.*) (emphasis added.)

In support of his assignment of partial weight, the ALJ essentially re-stated Dr. Halmi's conclusions and vaguely contrasted different portions of his opinion. (*Id.*) The ALJ concluded: "Due to the combination of [Plaintiff's] physical and mental impairments, the undersigned finds that restricting [Plaintiff] to simple, routine and repetitive tasks is warranted for the reasons stated in this opinion." (*Id.*) The ALJ further concluded that Dr. Halmi's assessment is "internally inconsistent with his own findings because despite her depression, he notes a very high level of functioning by [Plaintiff] including managing her own funds, participating in an on-line forum, and socializing with others, yet he finds that her symptoms significantly compromise her mental capacity." (*Id.*)

Section 404.1527(a)(1) of Title 20 of the Code of Federal Regulations defines "medical opinions" as "statements from acceptable medical sources that reflect judgments about the nature and severity" of a claimant's impairments, including "symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." The regulations require ALJs to consider and evaluate *every* medical opinion in the record, regardless of its source. 20 C.F.R. § 404.1527(c) (emphasis added).

Dr. Halmi's statement that Plaintiff's depression would interfere with her ability to perform a simple, repetitive task for an extended period of time is a "medical opinion" as

defined in the regulations. Therefore, the ALJ was required to evaluate this statement in the decision. However, as discussed above, the ALJ did not acknowledge this portion of Dr. Halmi's opinion. Because the ALJ included all of the other limitations identified by Dr. Halmi in his summary of Dr. Halmi's opinion, the Court must conclude that the ALJ did not consider or weigh this portion of his opinion.

The ALJ's failure to consider this portion of Dr. Halmi's opinion is not harmless error because the opinion contradicts the RFC. In his RFC, the ALJ found that Plaintiff was capable of performing unskilled, simple, repetitive tasks. (Doc. 11-10, PageID 854.) However, Dr. Halmi's opinion is considerably more restrictive, as he opined that Plaintiff would have "significant problems" maintaining adequate attention, concentration, persistence, and pace as needed to perform even a simple, repetitive task for an extended period of time. (Doc. 11-7, PageID 656.)

This opinion of Dr. Halmi—that Plaintiff will have difficulty performing even a simple, repetitive task—is arguably supported by his documented findings. For example, although Dr. Halmi reported that Plaintiff was not restless or fidgety and maintained appropriate eye contact, she "sat with a tense posture at the edge of her seat." (*Id.*, PageID 652.) Plaintiff was cooperative but she nevertheless appeared to have (and also reported) signs and symptoms of depression. (*Id.,* PageID 652-53.) Her affect ranged from flat to depressed and she cried several times during the evaluation. (*Id.,* PageID 653.) Plaintiff denied suicidal or homicidal ideation but said she felt traumatized by her mother's death. (*Id.*) Dr. Halmi also noted Plaintiff appeared somatically focused. (*Id.,* PageID 654.) In the "Summary and Conclusions" section of his report, Dr. Halmi

13

concluded that Plaintiff appeared "very depressed" during the evaluation. (*Id.*, PageID 655.) With regard to Plaintiff's cognitive functioning, Dr. Halmi concluded that her memory and executive functioning were "generally intact" but also noted evidence of some mild concentration problems. (*Id.*, PageID 655.) Dr. Halmi relied on this evidence of "some concentration problems" to support his opinion that Plaintiff is unable to perform a simple, repetitive task for an extended period of time. (*Id.*, PageID 656.) For example, although she exhibited adequate attention and concentration to repeat seven digits forward and five digits backward, which Dr. Halmi described as "average performance," she was unable to continue a serial seven subtraction task after making just one successful subtraction. (*Id.*, PageID 654.)

Dr. Halmi also cited to Plaintiff's self-reported activities to support his opinion. He noted that she engaged in "some productive activities" but also "spen[t] the majority of each day in bed." (*Id.*, PageID 656.) Earlier in his report, Dr. Halmi documented several other statements that suggest productivity difficulties. For example, Plaintiff told Dr. Halmi that she "sometimes neglect[ed] her hygiene." (*Id.*, PageID 652.) Although she denied having problems getting along with people, Plaintiff said that she felt anxious in social situations and rarely left home. (*Id.*, PageID 652-53.) Plaintiff also said that she had "given up all previously enjoyed activities," such as horseback riding, gardening, and furniture restoration. (*Id.*) Moreover, Dr. Halmi concluded that Plaintiff "was being truthful about her productivity based on [his] interaction with her." (*Id.*, PageID 656.)

In sum, Dr. Halmi's opinion regarding Plaintiff's ability to perform a simple, repetitive task for an extended period of time is arguably supported by his observations,

examination findings, and explanations in his report. Dr. Halmi's opinion in this regard contradicts the ALJ's RFC finding that Plaintiff is capable of performing unskilled, simple, repetitive tasks. The ALJ violated applicable Social Security regulations and reversibly erred by failing to evaluation this portion of Dr. Halmi's opinion.

## VI. CONCLUSION

The ALJ erred by failing to review Dr. Songer's findings and other evidence in support of her statement that Plaintiff is "unemployable." The ALJ also erred by failing to evaluate Dr. Halmi's opinion regarding Plaintiff's ability to perform simple, repetitive tasks. Thus, reversal is warranted.

## VII. REMAND

A remand is appropriate when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right. *Bowen*, 478 F.3d at 746. Remand may be warranted when the ALJ failed to provide "good reasons" for rejecting a treating medical source's opinions, see *Wilson*, 378 F.3d at 545-47; failed to consider certain evidence, such as a treating source's opinions, see *Bowen*, 478 F.3d at 747-50; failed to consider the combined effect of the plaintiff's impairments, see *Gentry*, 741 F.3d at 725-26; or failed to provide specific reasons supported by substantial evidence for finding the plaintiff lacks credibility, see *Rogers*, 486 F.3d at 249.

Under Sentence Four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for

rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99, 111 S. Ct. 2157, 115 L. Ed. 2d 78 (1991). Consequently, a remand under Sentence Four may result in the need for further proceedings or an immediate award of benefits. E.g., *Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is neither overwhelming nor strong while contrary evidence is lacking. However, Plaintiff is entitled to an Order remanding this case to the Social Security Administration pursuant to Sentence Four of § 405(g) for the reasons stated above. On remand, the ALJ should evaluate the evidence of record under the applicable legal criteria mandated by the Commissioner's regulations and rulings and by governing case law. The ALJ should evaluate Plaintiff's disability claim under the required five-step sequential analysis to determine anew whether Plaintiff was under a disability and whether her application for Disability Insurance Benefits and Supplemental Security Income should be granted.

**IT IS THEREFORE ORDERED THAT**:

1. Plaintiff's Statement of Errors (Doc. 12) is GRANTED;

2. The Court REVERSES the Commissioner's non-disability determination;

3. No finding is made as to whether Plaintiff was under a "disability" within the meaning of the Social Security Act;

4.      This matter is REMANDED to the Social Security Administration under Sentence Four of 42 U.S.C. § 405(g) for further consideration consistent with this Decision and Order; and

5.      This case is terminated on the Court's docket.

*s/ Caroline H. Gentry*
Caroline H. Gentry
United States Magistrate Judge